1

2

3

4

5

6

7

```
                    FILED
         CLERK, U.S. DISTRICT COURT

              APR - 7 2017

         CENTRAL DISTRICT OF CALIFORNIA
         BY                      DEPUTY
```

8

UNITED STATES DISTRICT COURT

9

FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

February 2017 Grand Jury

11

UNITED STATES OF AMERICA,

CR No. **17CR00203**

12

Plaintiff,

I N D I C T M E N T

13

v.

14

JEURI LIMON ELENES,
  aka "PRUDE,"

15

  aka "Rzr,"
  aka "FOX,"

16

  aka "Royal nuevo,"
JAIME OMAR SALAZAR ROSAS,

17

  aka "DOC,"
  aka "JM HCHRVTO,"

18

  aka "D,"
JESUS ABEL CAZARES ELENES,

19

  aka "TROCUA,"
  aka "Eltroc,"

20

  aka "Trocua Nuevo,"
FNU LNU, aka "A NUEVO,"

21

FNU LNU, aka "JFK,"
FNU LNU, aka "Chilit,"

22

JULIAN ROCHA,
  aka "JRoc,"

23

NOEL ELENES HIGUERA,
  aka "JURI,"

24

FNU LNU, aka "HM,"
EONOFRE VALDEZ ELENES,

25

  aka "Manny Silva,"
  aka "Cofre,"

26

FROILAN VILLARREAL,
  aka "DeL MoNtE,"

27

OSCAR VALDOVINOS ARREDONDO,
OCTAVIO GALINDO JR.,

28

  aka "Tavin,"

[21 U.S.C. § 846: Conspiracy to
Distribute and to Possess with
Intent to Distribute Controlled
Substances; 21 U.S.C.
§§ 841(a)(1), (b)(1)(A),
(b)(1)(B): Possession With Intent
to Distribute and Distribution of
Controlled Substances; 18 U.S.C.
§ 924(c)(1)(A)(i): Possession of
Firearms in Furtherance of a Drug
Trafficking Crime; 21 U.S.C.
§ 856(a)(1): Maintaining a Drug-
Involved Premises; 18 U.S.C.
§ 1956(h): Conspiracy to Launder
Monetary Instruments; 18 U.S.C.
§ 1956(a)(1)(B)(i): Attempted
Laundering of Monetary
Instruments; 18 U.S.C. § 2(a):
Aiding and Abetting; 18 U.S.C.
§ 982(a)(1): Criminal Forfeiture]

```
 1  EDGAR LIMON,
        aka "L.A.,"
 2      aka "E,"
        aka "Sensei,"
 3  MARIA ERNESTINA LIMON ELENES,
    MARIA GUADALUPE LOPEZ ZAMORA,
 4  ANTONIO ENRIQUE OROZCO,
        aka "El Sr,"
 5  DIANA MARGARITA ORTEGA GARCIA,
    MARTIN RUIZ SALDANA,
 6  FERNANDO MADUENO SANCHEZ,
    JESUS CAZAREZ SANDOVAL, and
 7  AUDREY URREA,

 8          Defendants.

 9
```

10      The Grand Jury charges:

11                      COUNT ONE

12                  [21 U.S.C. § 846]

13  A.   OBJECTS OF THE CONSPIRACY

14      Beginning on a date unknown and continuing until in or about

15  April 2016, in Los Angeles County, within the Central District of

16  California, and elsewhere, defendants JEURI LIMON ELENES, also known

17  as ("aka") "PRUDE," aka "Rzr," aka "FOX," aka "Royal nuevo"

18  ("LIMON"), JAIME OMAR SALAZAR ROSAS, aka "DOC," aka "JM HCHRVTO," aka

19  "D" ("SALAZAR"), JESUS ABEL CAZARES ELENES, aka "TROCUA," aka

20  "Eltroc," aka "Trocua Nuevo" ("CAZARES"), First Name Unknown ("FNU")

21  Last Name Unknown ("LNU"), aka "A NUEVO" ("A NUEVO"), FNU LNU, aka

22  "JFK" ("JFK"), FNU LNU, aka "Chilit" ("CHILIT"), JULIAN ROCHA, aka

23  "JRoc" ("ROCHA"), NOEL ELENES HIGUERA, aka "JURI" ("ELENES"), FNU

24  LNU, aka "HM" ("HM"), EONOFRE VALDEZ ELENES, aka "Manny Silva," aka

25  "Cofre" ("VALDEZ"), FROILAN VILLARREAL, aka "DeL MoNtE"

26  ("VILLARREAL"), OSCAR VALDOVINOS ARREDONDO ("ARREDONDO"), OCTAVIO

27  GALINDO JR., aka "Tavin" ("GALINDO"), EDGAR LIMON, aka "L.A.," aka

28  "E," aka "Sensei" ("EDGAR"); MARIA ERNESTINA LIMON ELENES

                                    2

("ERNESTINA"), MARIA GUADALUPE LOPEZ ZAMORA ("LOPEZ"), ANTONIO ENRIQUE OROZCO, aka "El Sr" ("OROZCO"), DIANA MARGARITA ORTEGA GARCIA ("ORTEGA"), MARTIN RUIZ SALDANA ("SALDANA"), FERNANDO MADUENO SANCHEZ ("SANCHEZ"), JESUS CAZAREZ SANDOVAL ("SANDOVAL"), and AUDREY URREA ("URREA"), and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally commit the following offenses:

1.   to distribute and possess with intent to distribute at least one kilogram of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(i);

2.   to distribute and possess with intent to distribute at least five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii); and

3.   to distribute and possess with intent to distribute at least 50 grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii).

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

The objects of the conspiracy were to be accomplished, in substance, as follows:

1.   Defendants LIMON, SALAZAR, CAZARES, A NUEVO, and JFK would acquire drugs in Mexico for re-sale to customers in California and elsewhere within the United States.

3

2.   Defendants CHILIT and ROCHA would purchase drugs for re-sale and further distribution to other customers within the United States.

3.   Defendants LIMON, SALAZAR, CAZARES, A NUEVO, JFK, CHILIT, ROCHA, ELENES, HM, VALDEZ, VILLARREAL, and EDGAR would use BlackBerry handheld cellular devices to send electronic messages to communicate regarding drug trafficking and to attempt to evade detection by law enforcement.

4.   Defendants LIMON, SALAZAR, CAZARES, A NUEVO, JFK, and ELENES would arrange transportation of drugs for United States distribution via intermediaries, and would arrange the transportation of drug proceeds via intermediaries from the United States to Mexico, and within the United States.

5.   Defendants VALDEZ, VILLARREAL, ARREDONDO, GALINDO, LOPEZ, OROZCO, ORTEGA, SALDANA, SANCHEZ, SANDOVAL, and URREA would transport drugs and drug proceeds.

6.   Defendant EDGAR would arrange locations for the storage of drugs and drug proceeds.

7.   Defendants VILLARREAL, VALDEZ, and ERNESTINA would store drugs and drug proceeds, and would transfer drugs and drug proceeds.

C.   OVERT ACTS

In furtherance of the conspiracy and to accomplish the objects of the conspiracy, on or about the following dates and at approximately the following times, defendants LIMON, SALAZAR, CAZARES, A NUEVO, JFK, CHILIT, ROCHA, ELENES, HM, VALDEZ, VILLARREAL, ARREDONDO, GALINDO, EDGAR, ERNESTINA, LOPEZ, OROZCO, ORTEGA, SALDANA, SANCHEZ, SANDOVAL, and URREA, and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles County,

4

within the Central District of California, and elsewhere, including, but not limited to, the following:

1.   On July 12, 2014, at 2:51 p.m., using coded language, defendant ELENES sent defendant SALAZAR a message that a drug load would be transported the next day into the United States.

2.   On July 13, 2014, at 10:20 a.m., using coded language, defendant ELENES sent defendant SALAZAR a message advising that the drug transporter, defendant OROZCO, had gotten in line to cross the border into the United States.

3.   On July 13, 2014, at approximately 11:38 a.m., defendant OROZCO entered into the United States from Mexico via the crossing at San Ysidro Port of Entry, carrying the drug load in his vehicle.

4.   On July 13, 2014, at 1:41 p.m., using coded language, defendant ELENES sent defendant SALAZAR a message that the drug transporter, defendant OROZCO, had successfully entered the United States.

5.   On July 13, 2014, defendant OROZCO knowingly possessed, in his vehicle, approximately 3.527 kilograms of heroin, approximately 7.986 kilograms of cocaine, and approximately 9.936 kilograms of methamphetamine.

6.   On July 13, 2014, at 2:10 p.m., using coded language, defendant SALAZAR, unaware that defendant OROZCO had been detained by law enforcement, sent defendant ELENES a message that the drug transporter should call defendant SALAZAR's associate at a particular telephone number and state the code phrase "on behalf of Doc."

7.   On July 13, 2014, at 6:12 p.m., using coded language, defendant ELENES sent defendant SALAZAR a message that defendant

1  ELENES had not heard from the drug transporter (defendant OROZCO)

2  since the time that he had entered the United States.

3      8.  On July 14, 2014, between 12:22 p.m. and 12:27 p.m., using

4  coded language, defendant ELENES sent defendant SALAZAR messages

5  advising that the drug transporter had been arrested in Los Angeles,

6  and that his name was "Antonio Enrique Orozco."

7      9.  On January 10, 2015, at 10:59 a.m., using coded language,

8  defendant LIMON sent defendant VILLARREAL a message asking whether

9  the drug load had left already, and defendant VILLARREAL responded

10  that he and defendant EDGAR were getting the load ready.

11      10.  On January 12, 2015, at 3:38 p.m., using coded language,

12  defendant LIMON sent defendant VILLARREAL a message advising that

13  defendant VILLARREAL should package the drug load in a way that would

14  reduce the risk of detection by law enforcement.

15      11.  On January 14, 2015, between 9:46 a.m. and 9:53 a.m., using

16  coded language, defendant LIMON directed defendant JFK to cause drug

17  proceeds to be deposited into defendant EDGAR's Wells Fargo checking

18  account ending in 9373, and into another individual's Wells Fargo

19  checking account ending in 0370.

20      12.  On January 14, 2015, at the direction of defendant LIMON,

21  an unindicted co-conspirator in San Francisco, California, deposited

22  drug proceeds, in the form of $7,000 U.S. currency, into defendant

23  EDGAR's Wells Fargo bank account ending in 9373.

24      13.  On January 14, 2015, at the direction of defendant LIMON,

25  an unindicted co-conspirator in San Francisco, California, deposited

26  drug proceeds, in the form of $7,000 U.S. currency, into the Wells

27  Fargo bank account ending in 0370.

28

1      14.  On January 14, 2015, at 7:42 p.m., using coded language,

2  defendant LIMON sent a message asking defendant A NUEVO for a bank

3  account that could be used for the deposit of drug proceeds.

4      15.  On January 14, 2015, at 8:12 p.m., using coded language,

5  defendant A NUEVO sent defendant LIMON the name and account number

6  for a Wells Fargo business account ending in 9742 so that this

7  account could be used for the deposit of drug proceeds.

8      16.  On January 14, 2015, at the direction of defendants LIMON

9  and A NUEVO, an unindicted co-conspirator in Lynwood, California,

10  deposited drug proceeds, in the form of $8,400 U.S. currency, into

11  the Wells Fargo business account ending in 9742.

12      17.  On January 15, 2015, at the direction of defendants LIMON

13  and A NUEVO, an unindicted co-conspirator in Baldwin Park,

14  California, attempted to deposit drug proceeds, in the form of $8,600

15  U.S. currency, into the Wells Fargo business account ending in 9742,

16  but the deposit was mistakenly credited to an account number ending

17  in 3953.

18      18.  On January 15, 2015, at 5:10 p.m., using coded language,

19  defendant A NUEVO sent defendant LIMON the name and account number

20  for a Wells Fargo personal account ending in 0531 so that this

21  account could be used for the deposit of drug proceeds.

22      19.  On January 15, 2015, between 5:10 p.m. and 5:25 p.m., using

23  coded language, defendant LIMON sent defendant EDGAR the name and

24  account number for the Wells Fargo personal account ending in 0531 so

25  that this account could be used for the deposit of drug proceeds.

26      20.  On January 16, 2015, at the direction of defendants LIMON

27  and A NUEVO, defendant ERNESTINA deposited drug proceeds, in the form

28

of $5,000 U.S. currency, into the Wells Fargo bank account ending in 0531.

21.   On January 22, 2015, between 2:29 p.m. and 3:00 p.m., using coded language, defendant A NUEVO sent messages to defendant LIMON with the name and account number for the Wells Fargo business account ending in 9742 so that this account could again be used for the deposit of drug proceeds.

22.   On January 22, 2015, between 3:41 p.m. and 4:55 p.m., using coded language, defendant LIMON sent a series of messages to defendant VILLARREAL asking him to pick up drug proceeds, and then deposit $8,800 of the drug proceeds into the Wells Fargo business account ending in 9742.

23.   On January 22, 2015, at the direction of defendants LIMON and A NUEVO, defendant VILLARREAL deposited drug proceeds, in the form of $8,800 U.S. currency, into the Wells Fargo business account ending in 9742.

24.   On January 22, 2015, at 5:36 p.m., using coded language, defendant LIMON directed defendant VILLARREAL to separately deposit $5,600 of drug proceeds into the Wells Fargo business account ending in 9742.

25.   On January 23, 2015, at the direction of defendants LIMON and A NUEVO, defendant VILLARREAL deposited drug proceeds, in the form of $5,600 U.S. currency, into the Wells Fargo business account ending in 9742.

26.   On January 28, 2015, using coded language, defendants LIMON and EDGAR exchanged messages about finding a bank account where they could deposit drug proceeds, and defendant LIMON stated that they

1   should not use a Wells Fargo account because they had already made
2   seven deposits that month into Wells Fargo accounts.

3       27.   On January 28, 2015, using coded language, defendant EDGAR
4   sent a message to defendant LIMON advising that they should use
5   defendant ERNESTINA's account to deposit drug proceeds, and defendant
6   LIMON responded by asking for the account information.

7       28.   On January 28, 2015, defendant EDGAR sent defendant LIMON
8   the account information for defendant ERNESTINA's Bank of America
9   account ending in 6338 so that this account could be used for the
10  deposit of drug proceeds.

11      29.   On later dates, in 2015 and 2016, at the direction of
12  defendant LIMON, unindicted co-conspirators deposited drug proceeds,
13  in the form of U.S. currency, into defendant ERNESTINA's Bank of
14  America account ending in 6338.

15      30.   On February 4, 2015, at 10:07 a.m., using coded language,
16  defendant ROCHA sent defendant LIMON a message ordering seven pounds
17  of methamphetamine.

18      31.   On February 4, 2015, at 10:45 a.m., using coded language,
19  defendant LIMON sent defendant VILLARREAL a message that defendant
20  ROCHA wanted seven pounds of methamphetamine.

21      32.   On February 4, 2015, at 10:51 a.m., using coded language,
22  defendant VILLARREAL sent his telephone number to defendant LIMON so
23  that it could be used when coordinating the transfer of seven pounds
24  of methamphetamine to defendant ROCHA.

25      33.   On February 4, 2015, at 2:16 p.m., using coded language,
26  defendant VILLARREAL sent a message to defendant LIMON confirming
27  that defendant VILLARREAL had been contacted by defendant ROCHA's

28

1  associate (defendant SALDANA) regarding the seven pounds of
2  methamphetamine.

3      34.  On February 4, 2015, in El Monte, California, defendant
4  VILLARREAL delivered seven pounds of methamphetamine to defendant
5  SALDANA.

6      35.  On February 4, 2015, between 8:07 p.m. and 8:12 p.m., using
7  coded language, defendant VILLARREAL sent a series of messages to
8  defendant LIMON confirming that defendant VILLARREAL had provided
9  seven pounds of methamphetamine to defendant ROCHA.

10     36.  On February 4, 2015, defendant SALDANA knowingly possessed,
11 in his vehicle, approximately 3.087 kilograms of methamphetamine
12 (approximately seven pounds of methamphetamine).

13     37.  On January 31, 2015, at 8:47 p.m., using coded language,
14 defendant ELENES sent defendant LIMON the name of the transporter
15 (defendant ORTEGA), who would be crossing a drug load into the United
16 States, as well as her date of birth, and that she would be crossing
17 in a Chevrolet Cavalier.

18     38.  On February 1, 2015, at 8:54 a.m., using coded language,
19 defendant ELENES sent defendant LIMON a message advising that the
20 drug transporter (defendant ORTEGA) was in line to cross the border
21 into the United States.

22     39.  On February 1, 2015, at approximately 8:59 a.m., defendant
23 ORTEGA, in a Chevrolet Cavalier, entered into the United States from
24 Mexico via the crossing at the San Ysidro Port of Entry.

25     40.  On February 1, 2015, at 9:10 a.m., using coded language,
26 defendant ELENES sent defendant LIMON a message advising that the
27 drug transporter (defendant ORTEGA) had successfully entered the
28 United States.

41. On February 1, 2015, between 10:04 a.m. and 10:05 a.m., using coded language, defendant LIMON sent defendant ELENES a message advising that defendant LIMON would notify his associate that the drug load was on its way.

42. On February 1, 2015, between 10:20 a.m. and 10:23 a.m., using coded language, defendant LIMON sent a series of messages telling defendant VILLARREAL that a load of methamphetamine was on its way.

43. On February 1, 2015, at 10:52 a.m., using coded language, defendant LIMON sent defendant VILLARREAL a message advising defendant VILLARREAL that the drug transporter (defendant ORTEGA) was arriving at the transfer location.

44. On February 1, 2015, at 12:13 p.m., using coded language, defendant ELENES sent defendant LIMON a message providing a telephone number for defendant LIMON's associate to use to coordinate the transfer, and asking defendant LIMON to pay the drug transporter (defendant ORTEGA).

45. On February 1, 2015, at 12:17 p.m., using coded language, defendant LIMON sent a telephone number to defendant VILLARREAL with instructions to call the number to coordinate the pickup of the drug load.

46. On February 1, 2015, between 4:25 p.m. and 4:35 p.m., using coded language, defendant VILLARREAL sent messages to defendant LIMON confirming that defendant VILLARREAL had received 21 pounds of methamphetamine, had repackaged it so that it now weighed 22 pounds, and was going to store the methamphetamine at a stash house.

47.   On February 5, 2015, at 2:44 p.m., using coded language, defendant JFK sent a message asking defendant LIMON to receive 10 kilograms of cocaine on defendant JFK's behalf.

48.   On February 5, 2015, at 3:02 p.m., using coded language, defendant LIMON sent a message to defendant JFK containing defendant VILLARREAL's number, and defendant LIMON provided a code phrase that defendant JFK's associates were to use when calling defendant VILLARREAL to coordinate the delivery.

49.   On February 5, 2015, between 3:00 p.m. and 3:04 p.m., using coded language, defendant LIMON sent a series of messages advising defendant VILLARREAL that a drug shipment was on the way, and that the person calling defendant VILLARREAL about the shipment would be using a code phrase.

50.   On February 5, 2015, at 3:57 p.m., using coded language, defendant VILLARREAL sent a message to defendant LIMON confirming that the people who were going to deliver the drug shipment had called.

51.   On February 5, 2015, between 5:26 p.m. and 5:27 p.m., using coded language, defendant VILLARREAL sent a message asking if the delivery was for "10," and defendant LIMON responded with a message that defendant VILLARREAL should store the drugs.

52.   On February 5, 2015, at his residence in El Monte, California, defendant VILLARREAL possessed approximately 10.09 kilograms of cocaine, approximately 5.288 kilograms of methamphetamine, and multiple firearms.

53.   On February 6, 2015, between 3:28 p.m. and 3:33 p.m., using coded language, defendant LIMON sent messages advising defendant

1   CHILIT that defendant VILLARREAL had received 10 drug units but was
2   not answering defendant LIMON's messages.

3       54.   On February 6, 2015, between 4:01 p.m. and 4:11 p.m., using
4   coded language, defendant LIMON sent messages advising defendant JFK
5   that defendant VILLARREAL had been detained by law enforcement, that
6   defendant LIMON was investigating how it happened, and that defendant
7   LIMON believed that the methamphetamine was lost to law enforcement
8   because of the cocaine delivery.

9       55.   On February 6, 2015, between 7:20 p.m. and 7:29 p.m., using
10  coded language, defendant LIMON sent a message to defendant ELENES
11  that some of defendant ELENES's methamphetamine had been lost to law
12  enforcement, and the cocaine that defendant VILLARREAL received had
13  also been lost to law enforcement.

14      56.   On March 20, 2015, using coded language, defendant LIMON
15  sent a message asking defendant EDGAR for a bank account for the
16  deposit of $7,000 of drug proceeds, and defendant EDGAR confirmed
17  that they could use the account ending in "73" (defendant EDGAR's
18  Wells Fargo account ending in 9373).

19      57.   On March 20, 2015, using coded language, defendant LIMON
20  sent to his drug customer the account information for defendant
21  EDGAR's account ending in 9373 so that the customer could deposit
22  drug proceeds.

23      58.   On March 20, 2015, at the direction of defendant LIMON, an
24  unindicted co-conspirator in Omaha, Nebraska, deposited drug
25  proceeds, in the form of $7,000 U.S. currency, into defendant EDGAR's
26  Wells Fargo bank account ending in 9373.

27      59.   On March 28, 2015, at 5:08 p.m., using coded language,
28  defendant SALAZAR sent a customer a message advising that defendant

SALAZAR would be sending 15 drug units to the customer's associates in the United States.

60.   On March 29, 2015, between 9:25 p.m. and 9:34 p.m., using coded language, defendant SALAZAR sent the customer a message confirming that the drug shipment of 15 units would arrive in Modesto, California, in the morning.

61.   On March 30, 2015, between 9:23 a.m. and 9:28 a.m., using coded language, defendant SALAZAR sent the customer a message that the drugs had arrived in Modesto.

62.   On March 30, 2015, between 10:05 a.m. and 10:16 a.m., using coded language, the customer sent a series of messages advising defendant SALAZAR that the customer's associates were ready to pick up drugs from defendant SALAZAR's associate, and the customer provided the name and telephone number of his associate "Fernando" (defendant SANCHEZ).

63.   On March 30, 2015, at 10:22 a.m., using coded language, defendant SALAZAR's associate sent a message to defendant SALAZAR that they had delivered the drug shipment to defendant SANCHEZ.

64.   On March 30, 2015, at his residence in Modesto, California, defendant SANCHEZ possessed approximately 5.425 kilograms of methamphetamine and approximately $47,000 in U.S. currency.

65.   On March 30, 2015, at 12:56 p.m., using coded language, defendant SALAZAR sent the customer a message advising that there appeared to be an incident in the area.

66.   On March 30, 2015, at 1:30 p.m., using coded language, the customer told defendant SALAZAR that his associate was not answering.

67.   On June 1, 2015, at the direction of defendant LIMON, an unindicted co-conspirator in Phoenix, Arizona, deposited drug

14

proceeds, in the form of $4,000 U.S. currency, into defendant EDGAR's Wells Fargo bank account ending in 9373.

68. On June 1, 2015, using coded language, defendant LIMON sent defendant EDGAR a message informing defendant EDGAR that drug proceeds had just been deposited into defendant EDGAR's bank account.

69. On June 1, 2015, using coded language, defendant EDGAR sent a message to defendant LIMON confirming that the deposit had been made into defendant EDGAR's account.

70. On July 8, 2015, defendant EDGAR rented an apartment at 720 North Soldano Avenue, Unit #4, Azusa, California, for the purpose of distributing controlled substances.

71. On or after July 8, 2015, defendant VALDEZ moved into the apartment at 720 North Soldano Avenue, Unit #4, Azusa, California, to store and distribute controlled substances at this location.

72. On August 15, 2015, between 9:58 a.m. and 10:04 a.m., using coded language, defendants LIMON and JFK exchanged messages about amounts owed, and defendant LIMON advised that defendant JFK owed $800 for his share of the past month's rent on the stash house.

73. On August 15, 2015, at 12:28 p.m., using coded language, defendant EDGAR sent defendant LIMON a message that they needed to pay rent on the stash house.

74. On August 17, 2015, at 9:58 a.m., using coded language, defendant VALDEZ sent a message to defendant LIMON advising that defendant VALDEZ was paying the rent on the stash house.

75. On August 22, 2015, at 1:38 p.m., using coded language, defendant VALDEZ sent defendant LIMON a series of messages advising that a customer wanted ten pounds of methamphetamine and would pay for it seven days after delivery.

76. On August 22, 2015, at 1:46 p.m., using coded language, defendant LIMON sent defendant VALDEZ a message in which defendant LIMON agreed to sell ten pounds of methamphetamine to a customer.

77. On August 22, 2015, between 1:59 p.m. and 2:05 p.m., using coded language, defendant VALDEZ sent defendant LIMON a message that the customer was from Bakersfield.

78. On August 22, 2015, at 2:09 p.m., using coded language, defendant VALDEZ sent defendant LIMON a message advising that the customer would pick up the methamphetamine on Monday, August 24.

79. On August 22, 2015, at 6:57 p.m., using coded language, defendant LIMON sent a message instructing defendant VALDEZ to set aside ten pounds for a customer.

80. On August 22, 2015, at 7:27 p.m., using coded language, defendant VALDEZ sent defendant LIMON a message confirming that the drugs had been set aside.

81. On August 24, 2015, at 12:48 p.m., using coded language, defendant VALDEZ sent defendant LIMON a message that defendant VALDEZ was going to make the delivery.

82. On August 24, 2015, at approximately 1:55 p.m., defendant VALDEZ delivered ten pounds of methamphetamine to defendant ARREDONDO.

83. On August 24, 2015, at 1:58 p.m., using coded language, defendant VALDEZ sent defendant LIMON a message confirming that defendant VALDEZ had delivered the methamphetamine.

84. On August 24, 2015, defendant ARREDONDO knowingly possessed, in a vehicle he was driving, approximately 4.464 kilograms of methamphetamine (approximately ten pounds of methamphetamine).

85. On August 24, 2015, between 7:59 p.m. and 8:03 p.m., using coded language, defendant VALDEZ sent a series of messages advising defendant LIMON that defendant VALDEZ needed to remove drugs from the stash house because law enforcement had gone to the location of the customer's associate, to which defendant LIMON agreed.

86. On August 24, 2015, at 9:09 p.m., using coded language, defendant VALDEZ sent defendant LIMON a message advising that defendant VALDEZ had disposed of the phone that he had used to communicate with defendant ARREDONDO.

87. On August 28, 2015, between 6:20 p.m. and 6:25 p.m., using coded language, defendant CAZARES sent defendant LIMON a series of messages asking about the status of defendant CAZARES' drug shipment, and defendant LIMON responded that he would look into the status.

88. On August 28, 2015, between 6:25 p.m. and 6:34 p.m., using coded language, defendant LIMON sent defendant JFK a series of messages asking about the status of defendant CAZARES' drug load, and defendant JFK responded that the drug load would be transported that day across the border.

89. On August 28, 2015, at 6:29 p.m., using coded language, defendant LIMON sent defendant CAZARES a message advising that defendant CAZARES' drug load would be transported that day across the border.

90. On August 28, 2015, at 10:04 p.m., using coded language, defendant JFK sent defendant LIMON a message that the drug transporter was about to get in line to cross the border into the United States.

91. On August 28, 2015, at 10:15 p.m., using coded language, defendant JFK sent defendant LIMON a message stating that "Audrey

17

Rose Urrea" (defendant URREA) was transporting the drug load into the United States in a "2002 GMC."

92.  On August 28, 2015, at 10:16 p.m., using coded language, defendant LIMON forwarded to defendant CAZARES the name and vehicle information for the drug transporter.

93.  On August 28, 2015, at approximately 10:10 p.m., defendant URREA attempted to cross into the United States, in her 2002 GMC vehicle, while possessing approximately 23.13 kilograms of methamphetamine.

94.  On August 28, 2015, at 11:18 p.m., using coded language, defendant JFK sent a message advising defendant LIMON that defendant URREA had been sent to secondary inspection at the border.

95.  On August 28, 2015, at 11:21 p.m., using coded language, defendant LIMON sent defendant CAZARES a message that defendant URREA had been sent to secondary inspection.

96.  On August 31, 2015, between 11:48 a.m. and 11:49 a.m., using coded language, defendants CAZARES and LIMON exchanged messages in which defendant CAZARES asked if defendant LIMON had drugs in the United States, and defendant LIMON responded that he had some of good quality.

97.  On August 31, 2015, at 2:01 p.m., using coded language, defendant CAZARES sent a message asking defendant LIMON to provide six units of drugs to defendant CAZARES' customer.

98.  On August 31, 2015, at 2:02 p.m., using coded language, defendant LIMON sent defendant VALDEZ a message instructing defendant VALDEZ to provide six units of drugs to defendant CAZARES' customer.

99.  On August 31, 2015, at 3:00 p.m., using coded language, defendant VALDEZ sent defendant LIMON a message confirming that

1  defendant VALDEZ had provided six units of drugs to defendant
2  CAZARES' customer.

3      100. On August 31, 2015, at 7:10 p.m., using coded language,
4  defendant CAZARES sent a message to defendant LIMON advising that
5  defendant CAZARES' customer had money for pickup.

6      101. On August 31, 2015, between 8:33 p.m. and 8:42 p.m., using
7  coded language, defendant VALDEZ sent messages advising defendant
8  LIMON that defendant VALDEZ had picked up the money for the six units
9  of drugs.

10      102. On August 31, 2015, at 8:42 p.m., using coded language,
11  defendant LIMON sent a message to defendant CAZARES advising that
12  payment had been received for the six units of drugs.

13      103. On August 22, 2015, between 8:26 a.m. and 8:30 a.m., using
14  coded language, defendant JFK sent messages advising defendant LIMON
15  that defendant JFK was about to receive $22,000 from a third party
16  and would give the money to defendant LIMON toward a prior drug debt.

17      104. On August 24, 2015, at 9:39 p.m., defendant VALDEZ sent
18  defendant LIMON a message with a photograph of a vacuum sealer
19  machine.

20      105. On August 27, 2015, at 7:20 p.m., using coded language,
21  defendant LIMON sent defendant JFK a message advising that defendant
22  LIMON, on defendant JFK's behalf, had paid expenses for the stash
23  house.

24      106. On September 1, 2015, at 12:30 p.m., using coded language,
25  defendant LIMON sent defendant JFK a message advising that defendant
26  VALDEZ owed an additional $248 to the debt for the vacuum sealer
27  machine that defendant VALDEZ had purchased for use in the stash
28  house.

1     107. On September 1, 2015, between 12:33 p.m. and 12:36 p.m.,
2  using coded language, defendants LIMON and JFK exchanged messages
3  discussing the amount that defendant JFK owed defendant LIMON, to
4  include rent and insurance for the stash house, and the vacuum sealer
5  machine.

6     108. On September 2, 2015, at 11:43 a.m., using coded language,
7  defendant LIMON sent defendant VALDEZ a message instructing defendant
8  VALDEZ to give $22,000 of drug proceeds to defendant LIMON's mother
9  (defendant ERNESTINA).

10     109. On September 2, 2015, defendant VALDEZ possessed heroin,
11  cocaine, methamphetamine, a vacuum sealer machine and bags at 720
12  North Soldano Avenue, Apt #4, Azusa, California.

13     110. On September 2, 2015, between 4:55 p.m. and 5:02 p.m.,
14  using coded language, defendants VALDEZ and LIMON exchanged messages
15  regarding drugs at the stash house belonging to defendants LIMON and
16  JFK, as well as the weight of the units of drugs.

17     111. On September 2, 2015, between 5:21 p.m. and 5:32 p.m.,
18  using coded language, defendant VALDEZ sent defendant LIMON a message
19  confirming that at the stash house defendant LIMON had 12 units of
20  drugs and defendant JFK separately had 24 units of drugs.

21     112. On September 2, 2015, defendant VALDEZ gave $22,000 of drug
22  proceeds to defendant SANDOVAL, and they took the drug proceeds and
23  drugs in a vehicle to transport them.

24     113. On September 2, 2015, at 7:30 p.m., using coded language,
25  defendant VALDEZ sent defendant LIMON a message that defendant VALDEZ
26  was taking $22,000 of drug proceeds to defendant LIMON's mother
27  (defendant ERNESTINA).  A few minutes later, using coded language,
28  defendant VALDEZ then said that he was being followed by law

1   enforcement, and defendant LIMON replied that defendant VALDEZ should
2   not go to see defendant LIMON's mother.

3      114. On September 2, 2015, defendant VALDEZ was detained by law
4   enforcement driving a vehicle that contained drugs, and defendant
5   SANDOVAL was found a short distance away with $22,000 of drug
6   proceeds in her purse.

7      115. On September 2, 2015, between 8:10 p.m. and 8:12 p.m.,
8   using coded language, defendant LIMON sent defendant EDGAR a message
9   advising that defendant VALDEZ had not been responding to messages
10  and that defendant LIMON was worried.

11     116. On September 2, 2015, at 9:02 p.m., using coded language,
12  defendant LIMON sent defendant CHILIT a message instructing him to
13  erase defendant VALDEZ's contact information from defendant CHILIT's
14  phone because defendant VALDEZ had been caught by law enforcement.

15     117. On September 3, 2015, between 10:27 a.m. and 10:28 a.m.,
16  using coded language, defendant LIMON sent defendant CHILIT a series
17  of messages asking him to find out defendant VALDEZ's full name, and
18  defendant CHILIT responded with defendant VALDEZ's full name.

19     118. On September 3, 2015, between 11:44 a.m. and 11:50 a.m.,
20  using coded language, defendants LIMON and CAZARES exchanged messages
21  in which they discussed the arrest of defendant VALDEZ, and whether
22  it was related to prior law enforcement action against defendant
23  VILLARREAL.

24     119. On October 25, 2015, between 1:14 a.m. and 1:23 p.m., using
25  coded language, defendant LIMON sent defendant CHILIT a message that
26  defendant LIMON had 14 and a half units of drugs available in Los
27  Angeles, to which defendant CHILIT responded that a customer was
28  interested in making a purchase.

120. On October 25, 2015, at 4:49 p.m., using coded language, defendant CHILIT sent defendant LIMON a message advising him that defendant GALINDO would pick up the drugs the following day.

121. On October 26, 2015, at 5:27 p.m., using coded language, defendant LIMON sent defendant CHILIT a message asking when defendant GALINDO would pick up the drugs and informing that they were at the house of defendant LIMON's mother (defendant ERNESTINA).

122. On October 26, 2015, at 5:36 p.m., using coded language, defendant LIMON sent defendant CHILIT a message advising that the drugs were hidden in a tire.

123. On October 28, 2015, between 5:06 p.m. and 5:11 p.m., using coded language, defendant CHILIT sent defendant LIMON messages indicating that defendant GALINDO would pick up the drugs around 8 p.m.

124. On October 28, 2015, between 9:32 p.m. and 9:40 p.m., using coded language, defendant LIMON sent defendant CHILIT messages advising that defendant LIMON's mother (defendant ERNESTINA) would be back at the house soon and would be driving a gray Camry, to which defendant CHILIT responded that defendant GALINDO had seen her.

125. On October 28, 2015, between approximately 9:35 p.m. and 9:40 p.m., in Baldwin Park, California, defendant ERNESTINA delivered approximately 14 pounds of methamphetamine to defendant GALINDO, which defendant GALINDO then transported to Oxnard, California.

126. On October 28, 2015, between 10:58 p.m. and 11:02 p.m., using coded language, defendant CHILIT sent defendant LIMON messages asking if the tire should be cut, to which defendant LIMON responded that the air should be let out of the tire, and inside there should be 14 pounds and 180 grams.

127. On October 29, 2015, in Oxnard, California, defendant GALINDO possessed a tire containing approximately 6.45 kilograms of methamphetamine (approximately 14 pounds of methamphetamine).

128. On October 29, 2015, between 1:17 p.m. and 1:19 p.m., using coded language, defendant CHILIT sent defendant LIMON messages warning that defendant CHILIT had received a message from defendant GALINDO instructing him to erase defendant GALINDO's PIN number.

129. On October 29, 2015, between 8:19 p.m. and 8:26 p.m., using coded language, defendant CHILIT sent defendant LIMON a series of messages advising that defendant GALINDO had been arrested.

130. On March 23, 2016, using coded language, defendant LIMON sent a message asking defendant A NUEVO for Wells Fargo bank account numbers that could be used for the deposit of drug proceeds, which defendant A NUEVO agreed to provide.

131. On March 23, 2016, using coded language, defendant A NUEVO sent to defendant LIMON the name and account number of a Wells Fargo bank account ending in 8954 for the deposit of drug proceeds.

132. On March 31, 2016, at the direction of defendant LIMON, an unindicted co-conspirator in Memphis, Tennessee, deposited drug proceeds, in the form of $8,000 U.S. currency, into the Wells Fargo bank account ending in 8954.

133. On April 4, 2016, defendant LIMON sent to defendant A NUEVO a photograph of the $8,000 deposit made to the bank account ending in 8954.

134. On March 21, 2016, between 5:14 p.m. and 5:16 p.m., using coded language, defendant HM sent defendant A NUEVO messages that a female (defendant LOPEZ) would be transporting a drug load in a Mini Cooper across the border into the United States.

1      135. On March 21, 2016, at 8:03 p.m., defendant HM sent

2  defendant A NUEVO a message with a photograph of the license plate of

3  the Mini Cooper.

4      136. On March 22, 2016, at approximately 8:13 a.m., defendant

5  LOPEZ entered into the United States from Mexico by car via the

6  crossing at San Ysidro Port of Entry.

7      137. On April 10, 2016, between 3:31 p.m. and 3:35 p.m., using

8  coded language, defendant HM told defendant A NUEVO that 45 units of

9  drugs could be transported the following day.

10      138. On April 11, 2016, between 3:31 p.m. and 4:02 p.m., using

11  coded language, defendants A NUEVO and HM exchanged messages

12  discussing the timing of future drug deliveries for defendant

13  A NUEVO, because the female drug transporter wanted to cross twice a

14  week.

15      139. On April 11, 2016, at 5:26 p.m., defendant HM sent

16  defendant A NUEVO a message with a photograph of the license plate of

17  the Mini Cooper.

18      140. On April 11, 2016, between 7:29 p.m. and 7:33 p.m., using

19  coded language, defendant A NUEVO sent his associate a series of

20  messages advising that 45 units of drugs would be transported across

21  the border the morning of April 12, consisting of 20 units belonging

22  to the associate and 25 units belonging to defendant A NUEVO.

23      141. On April 12, 2016, at 5:39 a.m., using coded language,

24  defendant HM sent defendant A NUEVO a message that the drug

25  transporter (defendant LOPEZ) was in line to cross the border into

26  the United States.

27      142. On April 12, 2016, at approximately 7:29 a.m., defendant

28  LOPEZ, driving her Mini Cooper with the license plate depicted in the

24

photographs sent to defendant A NUEVO, entered into the United States from Mexico via the crossing at San Ysidro Port of Entry.

143. On April 12, 2016, at 7:33 a.m., using coded language, defendant HM sent defendant A NUEVO a message that the drug transporter (defendant LOPEZ) had successfully entered the United States.

144. On April 12, 2016, between 7:52 a.m. and 7:57 a.m., using coded language, defendant A NUEVO sent defendant HM messages that the drug load should be delivered to defendant A NUEVO's associates in Los Angeles.

145. On April 12, 2016, at 10:23 a.m., using coded language, defendant HM told defendant A NUEVO that the drug load had arrived at the meet location but that defendant A NUEVO's associate was not answering.

146. On April 12, 2016, defendant LOPEZ knowingly possessed, in her vehicle, approximately 20.49 kilograms of methamphetamine (approximately 45 pounds of methamphetamine).

147. On April 12, 2016, at 1:02 p.m., using coded language, defendant A NUEVO sent an associate a message that the female drug transporter (defendant LOPEZ) had not arrived at the meet location.

148. On April 12, 2016, between 5:22 p.m. and 5:28 p.m., using coded language, defendant A NUEVO sent his associate a series of messages advising that the female drug transporter (defendant LOPEZ) had been stopped by law enforcement.

149. On April 13, 2016, at 1:45 p.m., using coded language, defendant HM sent defendant A NUEVO a message with the address of the tow yard in Santa Ana where the Mini Cooper had been impounded.

150. On April 13, 2016, at 4:58 p.m., defendant HM sent to defendant A NUEVO a photograph of the Mini Cooper in the tow yard.

151. On April 14, 2016, at 2:22 p.m., using coded language, defendant HM sent defendant A NUEVO a message advising that the drug transporter's name was "Maria Guadalupe Lopez Zamora."

152. On April 15, 2016, at 12:08 p.m., using coded language, defendant HM sent a message to defendant A NUEVO about documents showing that defendant LOPEZ had been stopped by law enforcement and that the Mini Cooper had been impounded.

COUNT TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i); 18 U.S.C. § 2(a)]

On or about July 13, 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendants JAIME OMAR SALAZAR ROSAS, also known as ("aka") "DOC," aka "JM HCHRVTO," aka "D," NOEL ELENES HIGUERA, aka "JURI," and ANTONIO ENRIQUE OROZCO, aka "El Sr," each aiding and abetting the others, knowingly and intentionally possessed with intent to distribute at least one kilogram, that is, approximately 3.527 kilograms, of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

COUNT THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii); 18 U.S.C. § 2(a)]

On or about July 13, 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendants JAIME OMAR SALAZAR ROSAS, also known as ("aka") "DOC," aka "JM HCHRVTO," aka "D," NOEL ELENES HIGUERA, aka "JURI," and ANTONIO ENRIQUE OROZCO, aka "El Sr," each aiding and abetting the others, knowingly and intentionally possessed with intent to distribute at least five kilograms, that is, approximately 7.986 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

On or about July 13, 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendants JAIME OMAR SALAZAR ROSAS, also known as ("aka") "DOC," aka "JM HCHRVTO," aka "D," NOEL ELENES HIGUERA, aka "JURI," and ANTONIO ENRIQUE OROZCO, aka "El Sr," each aiding and abetting the others, knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 9.936 kilograms, of methamphetamine, a Schedule II controlled substance.

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about February 4, 2015, in Los Angeles County, within the Central District of California, defendants JEURI LIMON ELENES, also known as ("aka") "PRUDE," aka "Rzr," aka "FOX," aka "Royal nuevo," and FROILAN VILLARREAL, aka "DeL MoNtE," knowingly and intentionally distributed at least fifty grams, that is, approximately 3.087 kilograms, of methamphetamine, a Schedule II controlled substance.

COUNT SIX

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

On or about February 4, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendants JULIAN ROCHA, also known as "JRoc," and MARTIN RUIZ SALDANA, each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 3.087 kilograms, of methamphetamine, a Schedule II controlled substance.

COUNT SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii); 18 U.S.C. § 2(a)]

On or about February 5, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendants JEURI LIMON ELENES, also known as ("aka") "PRUDE," aka "Rzr," aka "FOX," aka "Royal nuevo," FNU LNU, aka "JFK," and FROILAN VILLARREAL, aka "DeL MoNtE," each aiding and abetting the others, knowingly and intentionally possessed with intent to distribute at least five kilograms, that is, approximately 10.09 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT EIGHT

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

On or about February 5, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendants JEURI LIMON ELENES, also known as ("aka") "PRUDE," aka "Rzr," aka "FOX," aka "Royal nuevo," NOEL ELENES HIGUERA, aka "JURI," and FROILAN VILLARREAL, aka "DeL MoNtE," each aiding and abetting the others, knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 5.288 kilograms, of methamphetamine, a Schedule II controlled substance.

COUNT NINE

[18 U.S.C. § 924(c)(1)(A)(i)]

On or about February 5, 2015, in Los Angeles County, within the Central District of California, defendant FROILAN VILLARREAL, also known as "DeL MoNtE," knowingly possessed at least one of the following firearms in furtherance of a drug trafficking crime, namely, conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846, as charged in Count One of this Indictment, and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), as charged in Counts Seven and Eight of this Indictment:

(1) a Sig Sauer model P226 .9mm pistol, bearing serial number 47A027596;

(2) a Glock model 23 .40 caliber pistol, bearing serial number HNX123;

(3) a Glock model 32C .357 caliber pistol, bearing serial number ECH863;

(4) a Colt model 1911 .45 caliber pistol, bearing serial number 4036ET0;

(5) a Davis model CN-22 .22 caliber pistol, bearing serial number 209764;

(6) a Raven Arms model P25 .25 caliber pistol, bearing serial number 245217;

(7) a Cobray model M11 .9mm pistol, bearing serial number 940020289.

COUNT TEN

[21 U.S.C. § 856(a)(1); 18 U.S.C. § 2(a)]

From on or about July 8, 2015 to on or about September 2, 2015, in Los Angeles County, within the Central District of California, defendants JEURI LIMON ELENES, also known as ("aka") "PRUDE," aka "Rzr," aka "FOX," aka "Royal nuevo," FNU LNU, aka "JFK," EDGAR LIMON, aka "L.A.," aka "E," aka "Sensei," and EONOFRE VALDEZ ELENES, aka "Manny Silva," aka "Cofre," each aiding and abetting the others, knowingly opened, leased, rented, used, and maintained a place, that is, a residence located at 720 North Soldano Avenue, Unit #4, Azusa, California, for the purpose of distributing controlled substances, namely, heroin, a Schedule I narcotic drug controlled substance, cocaine, a Schedule II narcotic drug controlled substance, and methamphetamine, a Schedule II controlled substance.

COUNT ELEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about August 24, 2015, in Los Angeles County, within the Central District of California, defendants JEURI LIMON ELENES, also known as ("aka") "PRUDE," aka "Rzr," aka "FOX," aka "Royal nuevo," and EONOFRE VALDEZ ELENES, aka "Manny Silva," aka "Cofre," knowingly and intentionally distributed at least fifty grams, that is, approximately 4.464 kilograms of methamphetamine, a Schedule II controlled substance.

COUNT TWELVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i); 18 U.S.C. § 2(a)]

On or about September 2, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendants JEURI LIMON ELENES, also known as ("aka") "PRUDE," aka "Rzr," aka "FOX," aka "Royal nuevo," FNU LNU, aka "JFK," and EONOFRE VALDEZ ELENES, aka "Manny Silva," aka "Cofre," each aiding and abetting the others, knowingly and intentionally possessed with intent to distribute at least one kilogram, that is, approximately 14.73 kilograms, of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

COUNT THIRTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii); 18 U.S.C. § 2(a)]

On or about September 2, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendants JEURI LIMON ELENES, also known as ("aka") "PRUDE," aka "Rzr," aka "FOX," aka "Royal nuevo," FNU LNU, aka "JFK," and EONOFRE VALDEZ ELENES, aka "Manny Silva," aka "Cofre," each aiding and abetting the others, knowingly and intentionally possessed with intent to distribute at least 500 grams, that is, approximately 1.989 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT FOURTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

On or about September 2, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendants JEURI LIMON ELENES, also known as ("aka") "PRUDE," aka "Rzr," aka "FOX," aka "Royal nuevo," FNU LNU, aka "JFK," and EONOFRE VALDEZ ELENES, aka "Manny Silva," aka "Cofre," each aiding and abetting the others, knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 16.38 kilograms, of methamphetamine, a Schedule II controlled substance.

## COUNT FIFTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about October 28, 2015, in Los Angeles County, within the Central District of California, defendants JEURI LIMON ELENES, also known as ("aka") "PRUDE," aka "Rzr," aka "FOX," aka "Royal nuevo," and MARIA ERNESTINA LIMON ELENES knowingly and intentionally distributed at least fifty grams, that is, approximately 6.45 kilograms, of methamphetamine, a Schedule II controlled substance.

COUNT SIXTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

On or about October 29, 2015, in Ventura County, within the Central District of California, and elsewhere, defendants FNU LNU, also known as ("aka") "Chilit," and OCTAVIO GALINDO JR., aka "Tavin," each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 6.45 kilograms, of methamphetamine, a Schedule II controlled substance.

COUNT SEVENTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

On or about April 12, 2016, in Orange County, within the Central District of California, and elsewhere, defendants FNU LNU, also known as ("aka") "A NUEVO," FNU LNU, aka "HM," and MARIA GUADALUPE LOPEZ ZAMORA, each aiding and abetting the others, knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 20.49 kilograms, of methamphetamine, a Schedule II controlled substance.

1                               COUNT EIGHTEEN

2                       [18 U.S.C. § 1956(h)]

3  A.   INTRODUCTORY ALLEGATIONS

4      At all times relevant to this Indictment:

5      1.   Defendant EDGAR LIMON, also known as ("aka") "L.A.," aka

6  "E," aka "Sensei" ("EDGAR"), a resident of Baldwin Park, California,

7  maintained a personal bank account at Wells Fargo Bank, account

8  number xxxxxx9373 in his name.

9      2.   Defendant MARIA ERNESTINA LIMON ELENES ("ERNESTINA"), a

10  resident of Baldwin Park, California, maintained a personal bank

11  account at Bank of America, account number xxxxxx6338 in her name.

12     3.   Unindicted co-conspirators maintained the following bank

13  accounts:

14          a.   A Wells Fargo personal account with account number

15  xxxxxx0370;

16          b.   A Wells Fargo business account with account number

17  xxxxxx9742;

18          c.   A Wells Fargo personal account with account number

19  xxxxxx0531; and

20          d.   A Wells Fargo personal account with account number

21  xxxxxx8954.

22  B.   OBJECT OF THE CONSPIRACY

23      Beginning on a date unknown and continuing until in or about

24  April 2016, in Los Angeles County, within the Central District of

25  California, and elsewhere, defendants JEURI LIMON ELENES, aka

26  "PRUDE," aka "Rzr," aka "FOX," aka "Royal nuevo" ("LIMON"), FNU LNU,

27  aka "A NUEVO" ("A NUEVO"), EONOFRE VALDEZ ELENES, aka "Manny Silva,"

28  aka "Cofre" ("VALDEZ"), FROILAN VILLARREAL, aka "DeL MoNtE"

("VILLARREAL"), EDGAR, and ERNESTINA, and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of a specified unlawful activity, that is, the unlawful distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

C.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as follows:

1.   Defendants LIMON and A NUEVO would generate proceeds from the distribution of illegal drugs in the United States.

2.   Defendants VALDEZ and VILLARREAL, and others known and unknown would collect drug proceeds, in the form of U.S. currency, from drug customers and their intermediaries.

3.   Defendants LIMON and A NUEVO would provide bank accounts for the deposit of drug proceeds, in order for the proceeds to be transferred for the purpose of concealing the nature, source, ownership, and control of the proceeds.

4.   Drug proceeds in the form of U.S. currency would be delivered to defendants ERNESTINA and VILLARREAL, and unindicted co-

44

conspirators, who would divide the currency into amounts below $10,000 and make deposits into accounts not in their name, for the purpose of concealing the nature, source, ownership, and control of the proceeds.

5.    Defendants EDGAR and ERNESTINA, and unindicted co-conspirators would allow U.S. currency drug proceeds to be deposited by other individuals into their bank accounts at the direction of defendants LIMON and A NUEVO, knowing that the currency was drug proceeds, and knowing that the purpose of the deposits was to conceal the nature, source, ownership, and control of the proceeds.

D.    OVERT ACTS

In furtherance of the conspiracy and to accomplish the object of the conspiracy, on or about the following dates and at approximately the following times, defendants LIMON, A NUEVO, VALDEZ, VILLARREAL, EDGAR, and ERNESTINA, and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles County, within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act Nos. 1 - 152:  The Grand Jury re-alleges and incorporates by reference as though fully set forth herein the allegations in paragraphs 1 through 152 of paragraph C of Count One of this Indictment.

Overt Act Nos. 153 - 168:  On or about the following dates, a known or unknown conspirator made the following deposits of drug proceeds, in the form of U.S. currency, for the purpose of concealing the nature, source, ownership, and control of the proceeds, that is, in order to conceal that the money deposited was the proceeds of the unlawful distribution of controlled substances, and that the money

deposited was owned and controlled by someone other than the account holder:

| Overt Act | Date | Location of Deposit | Account ID | Amount |
|---|---|---|---|---|
| 153 | 1/14/15 | San Francisco, CA | 9373 (EDGAR) | $7,000 |
| 154 | 1/14/15 | San Francisco, CA | 0370 | $7,000 |
| 155 | 1/14/15 | Lynwood, CA | 9742 | $8,400 |
| 156 | 1/15/15 | Baldwin Park, CA | 3953 | $8,600 |
| 157 | 1/16/15 | Baldwin Park, CA | 0531 | $5,000 |
| 158 | 1/23/15 | El Monte, CA | 9742 | $8,800 |
| 159 | 1/23/15 | Baldwin Park, CA | 9742 | $5,600 |
| 160 | 3/20/15 | Omaha, NE | 9373 (EDGAR) | $7,000 |
| 161 | 6/1/15 | Phoenix, AZ | 9373 (EDGAR) | $4,000 |
| 162 | 6/26/15 | Melrose Park, IL | 6338 (ERNESTINA) | $4,500 |
| 163 | 6/29/15 | Chicago, IL | 6338 (ERNESTINA) | $4,500 |
| 164 | 8/11/15 | Independence, MO | 6338 (ERNESTINA) | $6,000 |
| 165 | 9/21/15 | Phoenix, AZ | 6338 (ERNESTINA) | $4,980 |
| 166 | 9/23/15 | Perris, CA | 6338 (ERNESTINA) | $2,000 |
| 167 | 1/8/16 | Phoenix, AZ | 6338 (ERNESTINA) | $4,000 |
| 168 | 3/31/16 | Memphis, TN | 8954 | $8,000 |

COUNT NINETEEN

[18 U.S.C. § 1956(a)(1)(B)(i)]

On or about September 2, 2015, in Los Angeles County, within the Central District of California, defendant EONOFRE VALDEZ ELENES, also known as ("aka") "Manny Silva," aka "Cofre" ("VALDEZ"), knowingly attempted to conduct a financial transaction affecting interstate and foreign commerce, knowing that the property involved in such transaction represented the proceeds of some form of unlawful activity, and which transaction, in fact, involved the proceeds of a specified unlawful activity, that is, the unlawful distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of such proceeds. Specifically, on or about September 2, 2015, defendant VALDEZ attempted to deliver $22,000 in drug proceeds to another person in order to conceal its nature, location, source, ownership, and control.

FORFEITURE ALLEGATION

[18 U.S.C. § 982(a)(1)]

1. Pursuant to Title 18, United States Code, Section 982(a)(1), each defendant who is convicted of the offenses set forth in Count Eighteen and Count Nineteen of this Indictment shall forfeit to the United States the following property:

a. All right, title, and interest in any and all property involved in each offense in violation of Title 18, United States Code, Sections 1956 and 1957, or conspiracy to commit such offense, for which the defendant is convicted, and all property traceable to such property, including the following:

(i) all money or other property that was the subject of each transaction, transportation, transmission or transfer in violation of Title 18, United States Code, Sections 1956 and 1957;

(ii) all commissions, fees and other property constituting proceeds obtained as a result of those violations; and

(iii) all property used in any manner or part to commit or to facilitate the commission of those violations.

b. A sum of money equal to the total amount of money involved in each offense, or conspiracy to commit such offense, for which the defendant is convicted. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

2. Pursuant to Title 18, United States Code, Section 982(b), each defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in paragraph 1, if, by any act or omission of the defendant, the property described in paragraph 1, or any portion thereof, cannot be located upon the exercise of due

1  diligence; has been transferred, sold to, or deposited with a third

2  party; has been placed beyond the jurisdiction of the court; has been

3  substantially diminished in value; or has been commingled with other

4  property that cannot be divided without difficulty.

                                        A TRUE BILL


                                        _____/s/_____
                                        Foreperson


SANDRA R. BROWN
Acting United States Attorney



LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

KEVIN M. LALLY
Assistant United States Attorney
Chief, OCDETF Section

CAROL A. CHEN
Assistant United States Attorney
Deputy Chief, OCDETF Section

JENNIFER A. CORBET
Assistant United States Attorney
OCDETF Section